## CONSTRUCTION OF THE NEGOTIABLE INSTRUMENTS ACT.

[Circuit Court of Clark County.]

### HARRY L. ROCKFIELD ET AL V. THE FIRST NATIONAL BANK OF SPRINGFIELD, OHIO.

Decided, May, 1906.

*Promissory Notes—Maker—Surety—Endorser—Notice to Endorser—Negotiable Instruments Act of April 17, 1902.*

One who places his name on the back of a promissory note before delivery is a maker or surety, and is not entitled to notice of presentment and non-payment. The act of April 17, 1902, known as "The Negotiable Instrument Act," does not change the liability of such party as established by the Supreme Court of the state for many years.

DUSTIN, J. (orally) ; WILSON, J., and SULLIVAN, J., concur.

The First National Bank, as payee, brought two actions in the common pleas court against Rockfield et al upon two promissory notes of the defendant railway, on both of which notes the names of defendants, Rockfield and Snyder, appeared on the back as indorsers. Several other indorsers were also upon the notes, which were payable at the bank. The petition in each case is in the usual form, and does not aver that these indorsers were notified of any dishonor of the paper by the maker.

The indorsers above named demurred to the petition, and the demurrer was overruled. They then answered, and plaintiff below demurred to the answers, which set up that the defendants named were accommodation signers, and that they had not been notified of the dishonor of the paper.

The demurrers to these answers raised the same questions as the demurrers to the petitions. The demurrers were sustained, and Rockfield and Snyder prosecuted error to this court upon the judgments rendered, alleging that the court erred, first, in overruling the demurrers to the petitions, and second, in sustaining the demurrers to the answers.

Highly important and startling questions are thus raised as to the effect of the statute which was passed April 17, 1902, codify-

ing the law of negotiable instruments in Ohio. It is conceded that up to that time the law was, as announced by several decisions of the Supreme Court, that a stranger to an instrument, who had signed before delivery of the instrument, his name being upon the back thereof, was, in the absence of any explanation, maker and surety; but it is now contended that he is an indorser, entitled to notice of presentment and non-payment, and, in the absence of notice, that he is discharged. This theory of the case presents several ingenious and interesting points, and an examination of the question has been quite entertaining to the court.

We think that the sections which should be considered in determining this question are, first, Section 3173-1, the sub-head being "Liability of Irregular Indorser." This section reads as follows:

"Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and all subsequent parties.

"2. If the instrument is payable to the order of the maker, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

Therefore, his liability, as here defined, is the same as the maker and surety. It is in exact accord with the holdings of the Supreme Court in 55 O. S., p. 596, and previous decisions.

Section 3173*k* describes the liability of a general indorser, and that is the sub-head to this section, which reads:

"Every indorser who indorses without qualification, warrants to all subsequent holders in due course:

"1. The matters and things mentioned in paragraphs numbered one, two and three of the preceding section;"
and right here I will read paragraphs one, two and three of the preceding section, which is "j," and which defines the warranty where negotiation is by delivery:

"1. That the instrument is genuine and in all respects what it purports to be.

"2.   That he has a good title to it.
"3.   That all prior parties had capacity to contract."

That implies, of course, that he is an indorser in the regular course, and that it was transferred by the payee. or some subsequent indorser.    That would be. just as the law was before in the case of a party who indorsed after the first delivery.

"And, in addition, he engages that on due presentment, it shall be accepted or paid or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it."

This describes what was previously known as the liability of a general indorser, in the course of. trade.    Now, let us look at the subdivision on dishonor of paper.    Section 3174$g$, reads:

"[*To Whom Notice of Dishonor Must be Given.*]    Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

It is true that the words there are general; *any* indorser or drawer shall be given notice.    We think that must be read in the light of previous definitions of regular and irregular indorser, and to make the statutes consistent, it can only apply to a general indorser.    It will be observed that in Section 3173$i$, the party is not described as an endorser:

"Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:"    *    *    *

In Section 3173$k$, every indorser, etc., is described as such. In Section 3173$i$, the party described has the *liability* of an indorser to a certain extent; in the first, he is *called* an indorser.

Now, Section 3173$h$, has also been commented upon.    "When Person Deemed Indorser" is the sub-head:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser,

unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

We think that it is not inconsistent with the other section; but if it were, the statute describing the irregular indorser— and Rockfield and Snyder meet the description in this case— should control, upon the familiar principle that if there is any conflict between a general and a special statute, the special statute governs.

We are unable to see this in any other light than that Rockfield and Snyder come under the description of irregular indorsers in Section 3173i, and their liabilities are the same—as before stated, by decisions of the Supreme Court—as makers and sureties.

Some point was made of the fact that the title of the act reads: "To establish a law uniform with the laws of other states on negotiable instruments," and it is argued that that indicates in itself the intention to change the law on that subject; otherwise there would be no necessity for the act; and the implication is that the laws of Ohio are different from those of other states, and this act is made to conform to them, thereby showing the legislative intent to change the law on this subject.

That argument would be quite forcible if it only applied to the subject of indorsement. Then perhaps there would be an indication that the Legislature intended to change the law in Ohio on the subject of the liability of an indorser. But, in fact, it includes the whole field of the law of commercial paper; and while it does imply an intention to change the law in some respects and make it conform with that of other states, there is no indication where the change is to appear. There are pages and pages concerning commercial power in all its phases; and we get no light from the title as to what is to be changed.

We think that the court did not err either in overruling the demurrers to the petitions, or in sustaining the demurrers to the answers, and that the law has not been changed by the statute referred to, and the judgment will, therefore, be affirmed.

*Jas. Johnson, Jr.*, for plaintiff in error.

*Martin & Martin, Hagan & Hagan*, for defendant in error.